UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FRED TRAVIS,

    Plaintiff,                                    Case No. 12-11822

v.                                                  Paul D. Borman
                                                    United States District Judge

ADT SECURITY SERVICES, INC.,
And John Doe,

    Defendants.
_____/

<u>OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS COUNTS II
AND III OF PLAINTIFF'S COMPLAINT AND TO LIMIT PLAINTIFF'S RECOVERABLE
DAMAGES ON COUNT I TO $500 (ECF NO. 3)</u>

This matter is before the Court on Defendant ADT Security Services, Inc.'s ("ADT") Motion to Dismiss. (ECF No. 3.) Plaintiff filed a response (ECF No. 7) and ADT filed a reply (ECF No. 8). The Court held a hearing on Wednesday, August 8, 2012. For the reasons that follow, the Court GRANTS Defendant's Motion, DISMISSES Counts II and III of Plaintiff's Complaint and limits Plaintiff's recoverable damages on Count I to $500 dollars.

**INTRODUCTION**

This action involves Plaintiff's claim that his residential alarm service provider, Defendant ADT Security Services, Inc. ("ADT"), failed to perform its obligations under a service contract by intentionally failing to respond to an alarm and break-in at his home, resulting in the theft of Plaintiff's "lifelong savings and property and jewelry and appliances and automotive equipment, amounting to actual damages in excess of $45,000 dollars." (ECF No. 1, Notice of Removal, Ex. A, Compl. ¶ 16.) Plaintiff further alleges that ADT negligently employed personnel who were

responsible for the theft at his home and that ADT has engaged in "fraud and racketeering." *Id*. ¶¶ 11-22. ADT responds that Plaintiff is contractually limited to $500 in damages for any alleged failure to perform under the alarm service contract. ADT further argues that Plaintiff has failed as a matter of law to state a claim of either "negligent employment" or "fraud and racketeering."

## I.  BACKGROUND

Plaintiff entered into a written services contract with ADT on or about March 15, 2011, in which ADT agreed to install and monitor electronic security equipment at Plaintiff's residence, 13070 Killbourne, in Detroit, Michigan. (Compl. ¶¶ 1-2.) The six-page Residential Services Contract (the "Services Contract") contained the following provisions pertinent to this action:

> **YOU ACKNOWLEDGE AND ADMIT THAT BEFORE SIGNING YOU HAVE READ THE FRONT AND BACK OF THIS PAGE IN ADDITION TO THE ATTACHED PAGES WHICH CONTAIN IMPORTANT TERMS AND CONDITIONS FOR THIS CONTRACT. YOU STATE THAT YOU UNDERSTAND ALL THE TERMS AND CONDITIONS OF THE CONTRACT, INCLUDING, BUT NOT LIMITED TO, PARAGRAPHS 5, 6, 7, 8, 9, 10, AND 22.**

Def.'s Mot. Ex. A, Residential Services Contract (the Services Contract) at p. 1.[1]

The Services Contract further explains that ADT is not an insurer and that the amount paid

---

[1] Although Plaintiff does not attach a copy of the Services Contract to his Complaint, the Court will consider the Services Contract attached to Defendant's Motion to Dismiss as Exhibit A. The Services Contract is referred to in the Complaint, is integral to Plaintiff's claims and therefore is properly considered by the Court in ruling on the instant motion to dismiss. *See Commercial Money Center, Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007) ("when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment."). Although Plaintiff offered a different version of the Contract at the hearing on this matter, a version that was missing pages 3of 6 or 4of 6, this difference is immaterial given Plaintiff's acknowledgment, as discussed further *infra*, that he read and signed page 1 of 6 of the Services Contract. The Court notes that the version of the contract offered by Plaintiff, which is missing pages 3 and 4, otherwise tracks word for word, and paragraph for paragraph, with the version supplied by ADT. There is simply no basis to suggest that the allegedly missing pages 3 and 4 contained different terms than those contained in the ADT version.

for ADT services is limited to the liability ADT assumes under the Services Contract unrelated to the value of Plaintiff's property:

> **WE ARE NOT AN INSURER. WE ARE NOT AN INSURER AND YOU WILL OBTAIN FROM AN INSURER ANY INSURANCE YOU DESIRE. THE AMOUNT YOU PAY US IS BASED UPON THE SERVICES WE PERFORM AND THE LIMITED LIABILITY WE ASSUME UNDER THIS CONTRACT AND IS UNRELATED TO THE VALUE OF YOUR PROPERTY OR THE PROPERTY OF OTHERS LOCATED IN YOUR PREMISES. IN THE EVENT OF ANY LOSS OR INJURY TO ANY PERSON OR PROPERTY, YOU AGREE TO LOOK EXCLUSIVELY TO YOUR INSURER TO RECOVER DAMAGES. YOU WAIVE ALL SUBROGATION AND OTHER RIGHTS OF RECOVERY AGAINST US THAT ANY INSURER OR OTHER PERSON MAY HAVE AS A RESULT OF PAYING ANY CLAIM FOR LOSS OR INJURY TO ANY OTHER PERSON.**

Services Contract ¶ 5.

> The Services Contract also contains the following limitation of damages provision:

> **NO LIABILITY; LIMITED LIABILITY. IT WILL BE EXTREMELY DIFFICULT TO DETERMINE THE ACTUAL DAMAGES THAT MAY RESULT FROM OUR FAILURE TO PERFORM OUR DUTIES UNDER THIS CONTRACT. YOU AGREE THAT WE . . . ARE EXEMPT FROM LIABILITY FOR ANY LOSS, DAMAGE, INJURY OR OTHER CONSEQUENCE ARISING DIRECTLY OR INDIRECTLY FROM THE SERVICES . . . WE PERFORM OR THE SYSTEMS WE PROVIDE UNDER THIS CONTRACT. IF IT IS DETERMINED THAT WE OR ANY OF OUR AGENTS, EMPLOYEES . . . ARE DIRECTLY OR INDIRECTLY RESPONSIBLE FOR ANY SUCH LOSS, DAMAGE, INJURY OR OTHER CONSEQUENCE, YOU AGREE THAT DAMAGES SHALL BE LIMITED TO THE GREATER OF $500 OR 10% OF THE ANNUAL SERVICE CHARGE YOU PAY UNDER THIS CONTRACT. THESE AGREED UPON DAMAGES ARE NOT A PENALTY. THEY ARE YOUR SOLE REMEDY NO MATTER HOW THE LOSS, DAMAGE, INJURY OR OTHER CONSEQUENCE IS CAUSED, EVEN IF CAUSED BY OUR NEGLIGENCE, GROSS NEGLIGENCE, FAILURE TO PERFORM DUTIES UNDER THIS CONTRACT, STRICT LIABILITY, FAILURE TO COMPLY WITH ANY APPLICABLE LAW, OR OTHER FAULT.**

Services Contract ¶ 6. Finally, as relevant here, the Services Contract provides:

> **EXCLUSIVE DAMAGES REMEDY. YOUR EXCLUSIVE DAMAGE AND**

**LIABILITY REMEDIES ARE SET FORTH IN PARAGRAPH 6 ABOVE. WE ARE NOT LIABLE TO YOU OR ANY OTHER PERSON FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES.**

Services Contract ¶ 7.

Plaintiff claims that under the terms of the Services Contract, ADT agreed that in the event of a triggering of the electronic monitoring equipment installed at Plaintiff's home, ADT would physically send an employee to the residence to verify that a break-in had occurred and would immediately notify law enforcement of the occurrence. (Compl. ¶ 3.) Plaintiff claims that on October 27, 2011, the alarm at his residence was triggered and that he received a phone call from an ADT Dispatcher telling him that his alarm had been activated and that the police would be dispatched. (Compl. ¶ 6; Pl.'s Resp. 4.) Plaintiff asserts that following the representation made to him on the phone by the ADT Dispatcher that the police would be called, another ADT employee, who had been sent to the residence to verify the break-in , "falsely" informed the ADT Dispatcher that the break-in could not be verified and thus the police were never summoned to the residence and Plaintiff was robbed. (Compl. ¶ 9; Pl.'s Resp. 4-5.) Plaintiff asserts that "either the ADT investigator was mentally impaired, or, more likely, ADT was in bed with the burglars!" (Compl. ¶ 21; Pl.'s Resp. 5.) Plaintiff alleges that ADT was negligent in hiring an "alarm responder" who had been knowingly involved in burglaries and/or breaking and entering, or who "had [a] suspect background[]." (Compl. ¶ 14-15.)

ADT does not dispute these allegations for purposes of the motion, but claims that Plaintiff is limited by the terms of the Services Contract to recovering damages of $500 for the alleged breach. ADT also argues that Plaintiff's "negligent employment" and "fraud and racketeering" claims fail as a matter of law. For the reasons the follow, the Court GRANTS ADT's motion to

dismiss the negligent employment and fraud/racketeering claims (Counts II and III) and limits Plaintiff's recoverable damages under his breach of contract claim (Count I) to $500, as specified in the Services Contract.

## II. STANDARD OF REVIEW

### A. Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). But the court "need not accept as true legal conclusions or unwarranted factual inferences." *Id*. (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)). "[L]egal conclusions masquerading as factual allegations will not suffice." *Eidson v. State of Term. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level...." *Id*. at 555 (internal citations omitted). Dismissal is appropriate if the plaintiff has failed to offer sufficient factual allegations that make the asserted claim plausible on its face. *Id.* at 570. The Supreme Court clarified the concept of "plausibilty" in *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009):

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

> inference that the defendant is liable for the misconduct alleged. *Id*. at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557 (brackets omitted).

*Id*. at 1948-50. A plaintiff's factual allegations, while "assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *LULAC v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 127 S.Ct. at 1965). Thus, "[t]o state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *Bredesen*, 500 F.3d at 527 (citing *Twombly*, 127 S.Ct. at 1969).

In ruling on a motion to dismiss, the Court may consider the complaint as well as (1) documents that are referenced in the plaintiff's complaint or that are central to plaintiff's claims (2) matters of which a court may take judicial notice (3) documents that are a matter of public record and (4) letters that constitute decisions of a government agency. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 2499, 2509 (2007). *See also Greenberg v. Life Ins. Co. Of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999) (finding that documents attached to a motion to dismiss that are referred to in the complaint and central to the claim are deemed to form a part of the pleadings). Where the claims rely on the existence of a written agreement, and plaintiff fails to attach the written instrument, "the defendant may introduce the pertinent exhibit," which is then considered part of the pleadings. *QQC, Inc. v. Hewlett-Packard Co*., 258 F. Supp. 2d 718, 721 (E.D. Mich. 2003). "Otherwise, a plaintiff with a legally deficient claims could survive a motion to dismiss simply by failing to attach a dispositive document." *Weiner v. Klais & Co., Inc*., 108 F.3d 86, 89 (6th Cir. 1997).

### B. Federal Rule of Civil Procedure 9(b)

Federal Rule of Civil Procedure 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The Sixth Circuit has interpreted Rule 9(b) to require that a plaintiff allege "'the time, place and content of the alleged misrepresentations on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'" *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) (quoting *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003)).

When deciding a motion to dismiss under Rule 9(b) for failure to plead fraud with particularity, a court must also consider the policy favoring simplicity in pleading, codified in the "short and plain statement of the claim" requirement of Federal Rule of Civil Procedure 8. "'Rule 9(b)'s particularity requirement does not mute the general principles set out in Rule 8; rather, the two rules must be read in harmony.'" *Sanderson*, 447 F.3d at 876 (quoting *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir.1988)). "'On the other hand, a district court need not accept claims that consist of no more than mere assertions and unsupported or unsupportable conclusions.'" *Id.* (quoting *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006)).

### III. ANALYSIS

#### A. Breach of Contract - Count I

ADT does not move to dismiss Plaintiff's Breach of Contract claim but rather seeks to limit Plaintiff's damages under this Count to $500, the amount specified in the Services Contract. The Services Contract provides in pertinent part as follows:

> If it is determined that we . . . are directly or indirectly responsible for any such loss, damage, injury or other consequence, you agree that damages shall be limited to the

7

> greater of $500.00 or 10% of the annual service charge you pay under this contract. These agreed upon damages are not a penalty. They are your sole remedy no matter how the loss, damage, injury or other consequence is cause, even if caused by our negligence, gross negligence, failure to perform duties under this contract, strict liability, failure to comply with any applicable law, or other fault.

Def.'s Mot. Ex. A, Services Contract p. 4 ¶ 6.

Plaintiff asserts in his Affidavit filed in response to ADT's motion to dismiss that a question of facts exists with regard to the terms of his Services Contract with ADT because allegedly the contract he signed with ADT "contained only 4 pages," and he was "not aware that page 3 or 4 of his contract existed until after suit was filed in this case." (ECF No. 7, Pl.'s Resp. Ex. A, May 21, 2012 Affidavit of Fred Travis ¶¶ 2-4.) Plaintiff avers that he never saw the page of the Services Contract that contains the limitations of damages provisions. Plaintiff makes this assertion despite the fact that the pages that Plaintiff admits he saw and signed indicate that they are "1of 6," "2of 6," "5of 6," and "6of 6," respectively. Common sense and logic lead the Court to question why Plaintiff would have signed a document indicating that it consisted of six pages, only having read and understood four of the six.

But the Court need not rely on common sense or logic in rejecting Plaintiff's argument, as Michigan law precludes Plaintiff from making such an argument to avoid the terms and conditions of his Services Contract with ADT: "Where additional documents or terms are made part of a written contract by reference, the parties are bound by those additional terms even if they have never seen them. Failure of a party to obtain an explanation of contractual terms is ordinary negligence which estops the party from avoiding the contract on the ground the party was ignorant of its provisions." *Constr. Fasteners, Inc. v. Digital Equip. Co.*, No. 185679, 1996 WL 33348735, at *2 (Mich. Ct. App. Oct. 22, 1996) (internal citation omitted). The Services Contract clearly states, on

page "1of 6," which Plaintiff concedes he read and signed: "You acknowledge and admit that before signing you have read the front and back of this page in addition to the attached pages which contain important terms and conditions for this contract, including but not limited to paragraphs 5, 6, 7, 8, 9, 10 and 22." (Def.'s Mot. Ex. A, Services Contract 1.) Plaintiff cannot now claim, having read and signed page 1 with these important terms and limitations, that he is only bound by the terms of those paragraphs appearing on pages "5 of 6," and "6 of 6," i.e. paragraph 12 (partial) through 28. Plaintiff was on notice of any missing pages, paragraphs or other alleged omissions in the contract and "will not be heard to claim that those terms were not applicable." *Constr. Fasteners*, 1996 WL 33348735, at *2. Accordingly, barring some other basis for unenforceability, Plaintiff is bound by terms of the limitations-of-damages provision (Paragraph 6 of the Services Contract).[2]

In his Complaint, Plaintiff appears to acknowledge the limitations-of-damages provision of his Services Contract with ADT, but claims that it constitutes a contract of adhesion. (Compl. ¶¶ 4-6.) In his Response to ADT's motion to dismiss, however, Plaintiff appears to have abandoned this claim in favor of his claim, discussed *supra*, that he never saw or agreed to the limitations-of-damages provision of the ADT Services Contract. In any event, Plaintiff's contract of adhesion argument is unavailing, as recognized in several opinions of courts in this District that have upheld similar limitation-of-damages provisions in alarm service contracts. In *Spengler v. ADT Security*

---

[2] Plaintiff also makes much of the fact that on some of the pages of the Services Contract, e.g. page 3 of 6, the ADT representative wrote the name "Fred Davis" instead of "Fred Travis." Importantly, Plaintiff's signature appears on page 1 of 6, which contains the misprint "Fred Davis," and Plaintiff does not claim that the other identifying information, i.e. his address and phone number, are incorrect. The misprint by the ADT representative, indicating Plaintiff's name as "Fred Davis" rather than "Fred Travis" is likely just inattention to detail and, in any event, is immaterial given Plaintiff's acknowledgment that he read and signed page 1 of 6, thereby expressly accepting the terms contained in paragraphs 5-10 of the Services Contract.

*Servs., Inc.*, No. 06-cv-10036, 2006 WL 3004088 (E.D. Mich. Oct. 20, 2006), *aff'd Spengler v. ADT Security Servs., Inc.*, 505 F.3d 456 (6th Cir. 2007), Judge Cleland, interpreting a similar provision in another ADT contract, held that the limitation of damages provisions was enforceable and served to limit plaintiff's damages in a wrongful death action based on ADT's failure to respond to the appropriate address in a timely fashion, a delay that allegedly resulted in plaintiff's mother's death. In upholding the damages provision, Judge Cleland relied on Michigan case law interpreting a similar limitation of damages provision in the contract of a different Michigan alarm service provider:

> Plaintiff's attempt at distinguishing the long line of cases Defendant cites in support of liability limitation for alarm service providers is not persuasive. . . . The cases supporting Defendant's position are indeed "legion," (Def.'s Br. at 29), and the court will not repeat the many citations Defendant presents in support of that proposition, ( *id.*, at 29-30). In particular, the court relies on the following succinct analysis of the Michigan Court of Appeals:
>
>> Reasonableness is the primary consideration. The contract clause limiting defendant's liability to the aggregate of six monthly payments or $250 is manifestly reasonable under the circumstances of this case. Defendant is not in the insurance business. Rather it provides an alarm service for a specific sum. That sum is not a premium for theft insurance. The contract in question made this clear. Under these circumstances a clause limiting defendant's liability in the event the alarm system did not work properly is not unconscionable.

*Spengler*, 2006 WL 3004088, at *7 (quoting *St. Paul Fire & Marine Ins. Co. v. Guardian Alarm Co.*, 320 N.W .2d 244, 247 (Mich. Ct. App.1982)). *See also Ram Int'l Inc. v. ADT Sec. Servs., Inc.*, No. 11-10259, 2011 WL 5244936, at *10 (E.D. Mich. Nov. 3, 2011) (dismissing plaintiff's negligence and gross negligence claims based on ADT's alleged failure to adequately respond to an alarm, following *Spengler* and finding no duty independent of the alarm services contract).

Accordingly, the Court GRANTS Defendant's motion to limit Plaintiff's claim for damages

for breach of the Services Contract to $500.[3]

### B. Negligent Employment[4] - Count II

Plaintiff's "negligent employment" claim alleges that ADT is liable for breaching a duty to Plaintiff not to hire or employ alarm responders with criminal histories. (ECF No. 1, Compl. ¶¶ 13-15.) Plaintiff alleges that as a result of the alleged breach of this duty, Plaintiff suffered "extensive actual loss of his lifelong savings and property and jewelry and appliances and automotive equipment, amounting to actual damages in excess of $45,000." *Id*. ¶ 16.

Putting aside the pleading deficiencies that plague Plaintiff's "negligent employment" claim, the claim fails because Plaintiff fails to allege that he suffered physical harm. Courts in this district have held that Michigan law requires an allegation of physical injury to support a claim of negligent hiring/retention. *See Fremont Reorganizing Corp. v. Duke,* 811 F. Supp. 2d 1323, 1344 (E.D. Mich. 2011) (summarizing the "relevant governing law" holding that "'Michigan has never recognized a claim for negligent hiring by holding an employer liable for an employee's acts resulting in economic injury or for any kind of fraudulent acts'" ) (quoting *Vennittilli v. Primerica, Inc.*, 943 F. Supp. 793, 797 (E.D. Mich. 1996)); *Stacy v. H&R Block Tax Services, Inc.*, No 07-13327, 2011 WL 3566384, at *2 (E.D. Mich. Aug. 12, 2011) (recognizing that "'Michigan has never recognized a claim for negligent hiring by holding an employer liable for an employee's acts resulting in economic injury'") (quoting *Vennittilli*, 943 F. Supp. at 797). In *Vennittilli*, on which Judges Lawson and O'Meara rely in *Fremont* and *Stacy*, Judge Gilmore elaborated:

---

[3] It is unclear whether ADT intends to stipulate to liability and pay Plaintiff damages in the amount of $500 or whether ADT contests both liability and the recoverable amount damages. ADT will have to make its intention clear to the Court.

[4] The Court interprets Plaintiff to be asserting a negligent hiring/negligent retention claim.

> While Michigan courts have recognized a cause of action for negligent hiring where an employee commits a foreseeable act of physical violence; *see Bradley v. Stevens*, 329 Mich. 556, 46 N.W.2d 382 (1951); Michigan has not extended the concept to include [fraud in the sales of securities]. Accordingly, this court declines to extend negligent hiring to include economic injuries.

943 F. Supp. at 797. Contrary to Plaintiff's assertion that "*Vennittilli* fails to cite any authority for its holding," Judge Gilmore's citation to *Bradley v. Stevens*, 329 Mich. 556 (1951), supports the conclusion that Michigan courts have limited liability for negligent hiring/retention to acts that result in physical injury. *Bradley* and its progeny address the issue of employer liability for the reasonably foreseeable acts of employees that result in physical injury to a third party. *See Mt. Clements v. Ford Motor Co.*, 473 Mich. 373 (2005) (recognizing that "in those cases in which we have held that an employer can be held liable on the basis of its knowledge of an employee's propensities, the underlying conduct comprised the common-law tort of assault" and citing *Hersh v. Kentfield Builders, Inc.,* 385 Mich. 410, 412 (1971),and *Bradley*, 329 Mich. at 563). The touchstone of liability in the *Bradley*, *Hersh* line of cases is the foreseeability of an employee committing an act of physical injury or violence.

In *Dudley v. Thomas*, No. 08-14017, 2009 WL 1620413 (E. D. Mich. June 9, 2009), Judge Cohn applied this same rationale to a case involving a claim of negligent supervision: "The tort of negligent supervision applies to the liability of an employer for a threat of physical injury by an employee to a third person." 2009 WL 1620413, at *3 (citing *Bruchas v. Preventive Care, Inc.*, 553 N.W.2d 440, 443 (Minn. Ct. App. 1996)). *Bruchas*, the case on which Judge Cohn relies in *Dudley*, involved a claim of negligent retention in a sex harassment case. Noting that the underlying premise of the Restatement of Torts § 317 (the foundation for the negligent hiring/retention claim) is the prevention of bodily harm, the court in *Bruchas* rejected a claim for negligent retention of the

12

alleged harassing employee: "Because the record contains no evidence that appellant suffered from personal injury, her claims for negligent retention and negligent supervision fail as a matter of law." 553 N.W.2d at 443.

Plaintiff does not allege that any ADT employee caused, or threatened him with, physical injury. Nor does Plaintiff provide the Court with any authority that Michigan courts would recognize a claim for negligent hiring/retention that did not allege physical harm. Accordingly, the Court GRANTS Defendant's motion to dismiss Plaintiff's "Negligent Employment" claim. (Count II of Plaintiff's Complaint.)[5]

### C. "Fraud & Racketeering" (Count III)

The elements which must be proven to establish actionable fraud or misrepresentation in Michigan are well established:

> The general rule is that to constitute actionable fraud it must appear: (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery. . . . The burden of proof rests with plaintiffs. Fraud will not be presumed but must be proven by clear, satisfactory and convincing evidence.

---

[5] To the extent that Plaintiff may be seeking to assert a different negligence-based claim, the law is clear that, absent the existence of some independent duty imposed by statute or law, Plaintiff is limited to a claim based upon the parties' contract: "The Sixth Circuit has further stated that "under Michigan law, in order for an action in tort to arise out of a breach of contract, the act must constitute (1) a breach of duty separate and distinct from the breach of contract and (2) active negligence or misfeasance ." *Spengler v. ADT Sec. Serv.*, 505 F.3d 456, 457–58 (6th Cir. 2007) *aff'g* 2006 WL 3004088 (E.D. Mich. Oct.20, 2006) (Cleland, J.) (internal citations omitted). "In a case where there is no independent duty and a broken promise to perform the contract is the only violation, any liability must rest solely on breach of the contract. *Spengler*, 505 F.3d at 458." *Ram*, 2011 WL 5244936, at *4.

*Hi-Way Motor Co. v. Int'l Harvester Co.*, 398 Mich. 330, 336 (1976) (internal quotation marks and citations omitted). In his response to ADT's motion, Plaintiff stipulates to dismiss his fraud claim to the extent that it is based on alleged representations made to him at the time he entered into the contract with ADT. (ECF No. 7, Pl.'s Resp. 4.)

Plaintiff states that he now predicates his fraud claim solely on the representation allegedly made to him on the day of the break-in by an unidentified ADT Dispatcher "who told him the alarm at his residence at his home was activated and the police would be immediately dispatched to his residence." (ECF No. 7, Pl.'s Resp. 4.) Plaintiff claims that he "relied on the ADT representative's [] assurance that the police would immediately be dispatched to the residence." *Id*. at 4. Plaintiff asserts that because of this alleged assurance, Plaintiff did not go to the house himself and suffered loss as a result. *Id*. at 4-5. These allegations do not state an actionable claim of fraud.

Fraud "must be predicated upon a statement relating to a past or and existing fact. Future promises are contractual and do not constitute fraud." *Hi-Way Motor*, 398 Mich. at 336. The ADT representative's alleged statement to Plaintiff that police "would be immediately" dispatched to his house relates to a promise to perform in the future, not to a past or existing fact. As this Court noted in *Bye v. Nationwide Mut. Ins. Co.*, 733 F. Supp. 2d 805 (E.D. Mich. 2010):

> Since fraud must relate to facts then existing or which have previously existed, the general rule is that fraud cannot be predicated upon statements promissory in their nature and relating to future actions, nor upon the mere failure to perform a promise, or an agreement to do something at a future time, or to make good subsequent conditions which have been assured. Nor, it is held, is such nonperformance alone even evidence of fraud. Reasons given for this rule are that a mere promise to perform an act in the future is not, in a legal sense, a representation, and a failure to perform it does not change its character. Moreover, a representation that something will be done in the future, or a promise to do it, from its nature cannot be true or false at the time it was made. The failure to make it good is merely a breach of contract, which must be enforced by an action on the contract, if at all. *Cook v. Little Caesar Enter., Inc*., 972 F. Supp. 400, 410 (E.D. Mich.1997). A statement that, at the time

14

it is made, cannot be said "from its nature" to be true or false cannot be the basis for a claim in fraud.

733 F. Supp. 2d at 820.

Michigan courts have recognized exceptions to the rule that a claim of fraud must be based on a statement of past or existing fact, as summarized by the Michigan Court of Appeals in *Trice v. Oakland Development Ltd. Partnership*, No. 278392, 2008 WL 7488023 (Mich. Ct. App. Dec. 16, 2008):

> An action for fraudulent misrepresentation must be predicated upon a statement of past or existing fact. *Marrero v. McDonnell Douglas Capital Corp.*, 200 Mich. App. 438, 444, 505 N.W.2d 275 (1993). A promise of something to be done in the future is contractual in nature and is not a representation of existing fact that can support a claim of actionable fraud. *Id.; see also Foreman v. Foreman*, 266 Mich. App. 132, 143, 701 N.W.2d 167 (2005). However, there is a bad-faith exception to this rule; under this exception, "fraudulent misrepresentation may be based upon a promise made in bad faith without intention of performance." *Hi-Way Motor Co. v. Internat'l Harvester Co.*, 398 Mich. 330, 337-338, 247 N.W.2d 813 (1976). Under the bad faith exception, evidence of fraudulent intent must relate to conduct of the act "at the very time of making the representations, or almost immediately thereafter [.]" *Danto v. Charles C. Robbins, Inc.*, 250 Mich. 419, 425, 230 N.W. 188 (1930). There is also a "false token" exception to the general rule that broken promises of future conduct is not actionable fraud. *Hi-Way Motor Co, supra* at 339, 247 N.W.2d 813. "This exception pertains where, although no proof of the promisor's intent exists, the facts of the case compel the inference that the promise was but a device to perpetrate a fraud." *Id.* The false token exception has been interpreted to apply only where there is a fiduciary relationship. *Id.*

2008 WL 7488023, at *15.

Plaintiff's claims do not fall within either exception. First, there is no allegation of a fiduciary relationship between Plaintiff and the ADT Dispatcher such that the "false token" exception would or could apply. Moreover, there is no allegation that the ADT Dispatcher, on whose representation the Plaintiff claims to have relied, who allegedly promised that the police would be called thus inviting Plaintiff's reliance, is the person whom Plaintiff alleges made the false

15

and fraudulent statement. As Plaintiff explains in his response: "Defendant's agent/investigator, who arrived at Plaintiff's home, told the ADT dispatcher, falsely, that a break-in could not be verified. Moreover, despite the dispatcher's promise that the police would be called to the scene, the police were never called by ADT, as promised." (ECF No. 7, Pl.'s Resp. 2.) There is no allegation that the ADT Dispatcher, who made the allegedly actionable promise, knew, at the time he or she allegedly made the statement that the police would be called, that the representation was false or that she possessed at that moment or at any time thereafter a bad faith intention not to do as she promised. By Plaintiff's own description, the ADT Dispatcher was falsely informed by the ADT investigator that no break-in had occurred, resulting in the police not being called to Plaintiff's home. Plaintiff does not allege that the ADT investigator made any representations at all to the Plaintiff. There is no allegation that Plaintiff ever spoke to anyone other than the ADT Dispatcher.

Plaintiff's fraud claim also fails for the separate and independent reason that the claim fails to meet the pleading standards set forth in *Twombly* and *Iqbal* and fails to meet the heightened pleading standards required for pleading fraud under Fed. R. Civ. P. 9(b). In alleging fraud, Plaintiff must state "the time, place and content of the alleged misrepresentations on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Sanderson*, 447 F.3d at 877. "[A] district court need not accept claims that consist of no more than mere assertions and unsupported or unsupportable conclusions." *Id*.

Plaintiff's fraud claim is predicated on the following allegations:

> That in complete disregard of ADT's promises and duties, defendant-Corporation's employee completely violated said promises by telling the police: the break-in was <u>NOT</u> verified. [fn1 Which means do NOT send police to the protected premises.] In complete disregard for the TRUTH; in violation of their duty; in concert with the criminals; to aide and abet the burglars by knowingly and falsely telling the police the burglary was NOT verified! During all this time the burglars had the run of the

16

> "protected premises" and were carrying off Fred Travis' lifelong valuables. [fn 2 Confirmed by next door neighbor!]
>
> That there is only one possible explanation as to why defendant-Corporations' employees would aide and abet the burglars by expressly telling the police they had not "VERIFIED" the break-in, when they had already promised Fred Travis that ADT would dispatch the police to the premises forthwith. That the Defendant-Corporation employees were part of the burglary ring and helped the criminals by falsely telling the police false information! ADT employees knew there was a burglary in progress, yet incredulously told the police that the burglary/break-in was NOT verified - a FALSEHOOD to aide and abet the criminals.

Compl. ¶¶ 20-21 (all emphasis in original).

The entirely speculative nature of Plaintiff's fraud claim is perhaps best captured by Plaintiff's assertion that "there is only one possible explanation" for ADT's failure to perform under the contract - the employees were part of the burglary ring. Plaintiff apparently arrived at his fraud claim by process of deduction and elimination. At the hearing on this matter, Plaintiff's counsel again offered two alternative explanations for the failure to verify the break-in – either the ADT investigator "had some disability that impaired his ability to see a break-in" or he was "in concert with the burglars." But the federal pleading rules require more than deduction and speculation to state a claim, and particularly to state a claim of fraud. It is not even clear from Plaintiff's allegations if he accuses one, two or more ADT employees of misrepresentation, let alone who the alleged individuals are or exactly what facts they misrepresented and by what form of communication. The only conversation Plaintiff admits to having had is with the ADT Dispatcher, who is not the same ADT employee who made the allegedly false representations. More disturbingly, although Plaintiff alleges that ADT has hired individuals with criminal backgrounds of which ADT should have known, Plaintiff has failed even to identify the individuals, let alone supply any factual matter regarding their alleged criminal backgrounds. Plaintiff's fraud claim fails

17

to state a claim under *Twombly* and *Iqbal*, and surely fails to meet the heightened pleading standards of Fed. R. Civ. P. 9(b).[6]

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion to dismiss Counts II and III of Plaintiff's Complaint and limits recoverable damages on Plaintiff's breach of contract claim (Count I) to a maximum of $500.

IT IS SO ORDERED.

                                                        s/Paul D. Borman  
                                                        PAUL D. BORMAN  
                                                        UNITED STATES DISTRICT JUDGE

Dated: August 16, 2012

### CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on August 16, 2012.

                                                        s/Denise Goodine  
                                                        Case Manager

---

[6] Plaintiff's "Racketeering" claim utterly fails to meet the minimum pleading standards required under *Twombly* and *Iqbal*. The Complaint fails even to identify under what "racketeering" law Plaintiff seeks relief. Indeed, in his response, Plaintiff fails to address or rebut ADT's argument that his racketeering claim should be dismissed, responding only to the argument that his fraud claim should be dismissed. Surely the Complaint does not allege a "pattern" of racketeering, involving as it does a single break-in at Plaintiff's residence. *HJ Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 237 (1989). Accordingly, the Court GRANTS the motion to dismiss any "racketeering" claim.